UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
KALAMAZOO DIVISION

| | | |
|---|---|---|
| JAMES R. ENGLISH, JR. | ) | Case No. |
| 2125 E. Main St. | ) | |
| Kalamazoo, MI 49048 | ) | Judge |
| | ) | |
| on behalf of himself and all others similarly | ) | |
| situated, | ) | |
| | ) | **COMPLAINT** |
| Plaintiff, | ) | |
| | ) | (Jury Demand Endorsed Herein) |
| v. | ) | |
| | ) | |
| MANN + HUMMEL USA, INC. | ) | |
| c/o The Corporation Company | ) | |
| 40600 Ann Arbor Road East, Suite 201 | ) | |
| Plymouth, MI 48170 | ) | |
| | ) | |
| Defendant. | ) | |

Now comes Plaintiff James R. English, Jr., by and through undersigned counsel, and for his Complaint against Defendant Mann + Hummel USA, Inc., states and alleges the following:

**INTRODUCTION**

1.     This is a "collective action" instituted by Plaintiff as a result of Defendant's practices and policies of not paying its hourly, non-exempt employees, including Plaintiff and other similarly situated employees, wages for all hours worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

**JURISDICTION AND VENUE**

2.     This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), et seq.

3.      The Court has personal jurisdiction over Defendant because its principal place of business is in Michigan.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business throughout this District and Division and because a substantial part of the events and omissions giving rise to the claims occurred in this District and Division.

## PARTIES

5.      At all material times, Plaintiff was a resident of Kalamazoo County, Michigan.

6.      At all material times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e).

7.      At all material times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

8.      At all material times, Defendant is and was a corporation headquartered in Kalamazoo County, Michigan, with its principal place of business located at:  6400 South Sprinkle Road Portage, MI 49002.

9.      At all material times, Defendant was an employer within the meaning of 29 U.S.C. § 203(d).

10.     At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r).

11.     At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), and has enjoyed yearly gross revenue in excess of $500,000.

12.     Plaintiff's written consent to this action is attached hereto as Exhibit A.

13.     Written consents to join this action, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

## FACTUAL ALLEGATIONS

14.     Defendant, a manufacturer of filtration systems, operates manufacturing plants at multiple locations in the United States.

15.     From September 2015 through approximately December 2021, Plaintiff was employed by Defendant as a manufacturing employee at the Portage, Michigan plant.

16.     Specifically, Plaintiff worked as a material handler/forklift operator.

17.     At all material times, Defendant employed similarly situated manufacturing employees at each of its manufacturing plants, including but not limited to:  operators, machinists, material handlers, set up/production workers, and warehouse associates (hereinafter "manufacturing employees").

18.     Plaintiff and other similarly situated manufacturing employees had the same and/or substantially similar job duties and/or responsibilities and were subjected to the same policies and procedures.

19.     Defendant classified Plaintiff and other similarly situated manufacturing employees as non-exempt employees.

20.     Defendant paid Plaintiff and other similarly situated manufacturing employees an hourly wage.

21.     Plaintiff and other similarly situated manufacturing employees regularly worked more than 40 hours per week.

22.     Plaintiff estimates that he worked, on average, approximately 50 to 60 hours each week.

**(Failure to Pay for All Hours Worked)**

23.     Plaintiff and other similarly situated manufacturing employees were only paid for work performed between their scheduled start and stop times, regardless of when they clocked out, and were not paid for work performed before and after their scheduled start and stop times, including:  (a) changing into and out of their personal protective equipment, including gloves and safety glasses; (b) getting work assignments, including line assignments and production numbers; attending safety meetings; and (c) walking to and from their assigned area of the manufacturing floor.

24.     The pre-shift work—*i.e.*, changing into personal protective equipment, getting work assignments, attending safety meetings, and walking to assigned area of the manufacturing floor—took upwards of approximately 10 minutes or more.

25.     In order to start work on time, Plaintiff and other similarly situated manufacturing employees had to arrive at least 10 minutes early to start this pre-shift work.

26.     The post-shift work—*i.e.*, walking from the manufacturing floor and changing out of personal protective equipment—also took upwards of approximately 10 minutes or more, and thus, Plaintiff and other-similarly situated manufacturing employees were required to continue working for at least 10 minutes or more after their shift concluded in order to complete their post-shift work.

27.     Moreover, Plaintiff and other similarly situated employees frequently started performing their manufacturing work before their shift start times and continued performing said manufacturing work after their shift end times to complete tasks that were not finished at the end of their shifts.

28.     Defendant knew that Plaintiff and other similarly situated manufacturing employees performed this pre-shift and post-shift work because it required them to perform it and supervisors observed them performing it.

### (Failure to Pay for Donning Time)

29.     Before Plaintiff and other similarly situated manufacturing employees began their shifts, they donned personal protective equipment, including gloves and safety glasses.

30.     Wearing personal protective equipment was necessary because Plaintiff and other similarly situated manufacturing employees could not safely perform their work without it. It protected Plaintiff and other similarly situated manufacturing employees from various injuries, including head, hand, eye, and other bodily injuries.

31.     Additionally, Defendant required Plaintiff and other similarly situated manufacturing employees to wear the personal protective equipment, required them to put it on and take it off at work so that it was maintained in a sanitary and reliable condition, and did not want them to take it home.

32.     The time Plaintiff and other similarly situated manufacturing employees spent donning their personal protective equipment was an integral and indispensable part of their principal activities, was required by Defendant and the Occupational Safety and Health Administration ("OSHA") and was performed for Defendant's benefit in that it helped keep the plant floors safe and helped promote a more safe and efficient manufacturing process.

33.     Donning personal protective equipment is an intrinsic element of Plaintiff and other similarly situated manufacturing employees' job duties. Plaintiff and other similarly situated manufacturing employees cannot dispense with donning personal protective equipment if they are to perform their manufacturing work in a safe and efficient environment.

34.     Plaintiff and other similarly situated manufacturing employees were not paid for time spent donning their personal protective equipment.

**(Failure to Pay for Instruction Time)**

35.     In addition to donning their personal protective equipment, Plaintiff and other similarly situated manufacturing employees were required to attend meetings and receive line assignments and production numbers prior to their shift start time.

36.     The time Plaintiff and other similarly situated manufacturing employees spent receiving work assignments was necessary because they could not perform their manufacturing work without them.

37.     The time Plaintiff and other similarly situated employees spent attending meetings and receiving work assignments was an integral and indispensable part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

38.     Plaintiff and other similarly situated manufacturing employees had to obtain their work assignments before their shift start times because they were not kept in their assigned work area.

39.     Plaintiff and other similarly situated manufacturing employees were not paid for the time spent attending meetings and receiving work assignments prior to their shifts.

**(Failure to Pay for Post-donning Walk Time)**

40.     After donning their personal protective equipment, attending meetings and/or receiving work assignments, Plaintiff and other similarly situated manufacturing employees walked from the area in which they changed into their personal protective equipment and/or meeting location to the production floor.  Such time constitutes "post-donning walk time."

41.     Plaintiff and other similarly situated manufacturing employees were not paid for their post-donning walk time.

**(Failure to Pay for Performing Manufacturing Work)**

42.     Plaintiff and other similarly situated manufacturing employees frequently started performing their manufacturing work before their shift start times and were often required to work past the end of their shift times to complete manufacturing tasks that were not finished at the end of their scheduled shift stop time.

43.     The time Plaintiff and other similarly situated employees spent performing their manufacturing work was an integral and indispensable part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

44.     Plaintiff and other similarly situated manufacturing employees were not paid for the time spent performing their manufacturing work before their shift start time after their shift stop time.

**(Failure to Pay for Pre-doffing Walk Time)**

45.     After their shifts ended, Plaintiff and other similarly situated manufacturing employees walked from the production floor to the area in which they changed out of their personal protective equipment.  Such time constitutes "pre-doffing walk time."

46.     Plaintiff and other similarly situated manufacturing employees were not paid for their pre-doffing walk time.

**(Failure to Pay for Doffing Time)**

47.     After their shifts ended, Plaintiff and other similarly situated manufacturing employees doffed their personal protective equipment.

48.     The time Plaintiff and other similarly situated manufacturing employees spent doffing their personal protective equipment was an integral and indispensable part of their principal activities, was required by Defendant and OSHA, and was performed for Defendant's benefit in that it helped keep the manufacturing floor safe and helped promote a more safe and efficient manufacturing process.

49.     Doffing personal protective equipment is an intrinsic element of Plaintiff and other similarly situated manufacturing employees' job duties. Plaintiff and other similarly situated manufacturing employees cannot dispense doffing their personal protective equipment if they are to perform their manufacturing work.

50.     Plaintiff and other similarly situated manufacturing employees were not paid for time spent doffing their personal protective equipment.

**(Failure to Pay Overtime Compensation)**

51.     As a result of Plaintiff and other similarly situated manufacturing employees not being paid for all hours worked, Plaintiff and other similarly situated manufacturing employees were not paid overtime compensation for all of the hours they worked over 40 each workweek.

52.     The amount of time Plaintiff and other similarly situated employees spent on this requested and unpaid work amounted to approximately 20 to 30 minutes each day.

**(Failure to Keep Accurate Records)**

53.     Upon information and belief, Defendant failed to make, keep, and preserve accurate records of all of the unpaid work performed by Plaintiff and other similarly situated manufacturing employees employed by Defendant.

**(Defendant Willfully Violated the FLSA)**

54.     Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

55.     Plaintiff brings Count One of this action on his own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct.

56.     The class which Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is himself a member, is composed of and defined as follows:

> All current and former non-exempt manufacturing employees of Mann + Hummel USA, Inc., who worked at one or more of its plants in the United States at any time between 3 years prior to the filing of this suit and the date of final judgment in this matter.

57.     Plaintiff is unable, at this time, to state the exact size of the potential class, but upon information and belief, avers that it consists of more than 1,000 persons.

58.     This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA.  In addition to Plaintiff, numerous current and former manufacturing employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and is acting on behalf of their interests as well as his own in bringing this action.

59.     The similarly situated manufacturing employees are known to Defendant and are readily identifiable through its payroll records.  These individuals may readily be notified of this action, and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively

adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

60.     Although the exact amount of damages may vary among the similarly situated employees in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

## COUNT ONE
### (Fair Labor Standards Act Violations)

61.     Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

62.     Defendant's practice and policy of not paying Plaintiff and other similarly situated manufacturing employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek violated the FLSA, 29 U.S.C. §§ 201-219 and 29 CFR § 785.24.

63.     Defendant's failure to keep records of all the hours worked each workday and the total hours worked each workweek by Plaintiff and other similarly situated manufacturing employees violated the FLSA, 29 U.S.C. §§ 201-219, 29 CFR § 516.2(a)(7).

64.     By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated the provisions of the FLSA.

65.     As a result of Defendant's practices and policies, Plaintiff and other similarly situated manufacturing employees have been damages in that they have not received wages due to them pursuant to the FLSA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

A.      Issue an order permitting this litigation to proceed as a collective action;

B.      Order prompt notice to all class members that this litigation is pending and that they have the right to "opt in" to this litigation pursuant to 29 U.S.C. § 216(b);

C.      Award Plaintiff and the class he represents actual damages for unpaid wages;

D.      Award Plaintiff and the class he represents liquidated damages equal in amount to the unpaid wages found due to Plaintiff and the class under the FLSA;

F.      Award Plaintiff and the class he represents pre- and post-judgment interest at the statutory rate;

G.      Award Plaintiff and the class he represents attorneys' fees, costs, and disbursements; and

H.      Award Plaintiff and the class he represents further and additional relief as this Court deems just and proper.

Respectfully submitted,

/s/ *Robert B. Kapitan*
Robert B. Kapitan (Ohio 0074327)
Matthew S. Grimsley (Ohio 0092942)
(will apply for admission)
Anthony J. Lazzaro (Ohio 0077962)
(will apply for admission)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
robert@lazzarolawfirm.com
matthew@lazzarolawfirm.com
anthony@lazzarolawfirm.com

Attorneys for Plaintiff

11

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all eligible claims and issues.

/s/ *Robert B. Kapitan*
Robert B. Kapitan (Ohio 0074327)

One of Plaintiff's Attorneys
