UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. ENGLISH, JR., on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>MANN + HUMMEL USA, INC.,<br><br>    Defendant. | Case No. 1:22-cv-00881<br><br>Magistrate Judge Sally J. Berens<br><br>**JOINT MOTION FOR APPROVAL OF SETTLEMENT AND STIPULATION OF DISMISSAL WITH PREJUDICE** |

Representative Plaintiff James R. English, Jr., on behalf of himself and all Opt-In Party Plaintiffs ("Plaintiffs"), and Defendant Mann + Hummel USA, Inc. ("Defendant") (collectively with Plaintiffs, "the Parties") respectfully move this Honorable Court to approve the proposed settlement reached by the Parties and memorialized in the Joint Stipulation of Settlement and Release ("Settlement" or "Agreement") attached as Exhibit 1.

The Parties respectfully request that the Court enter an Order, substantially as proposed in Exhibit 2, approving the Settlement as fair and reasonable.

The requested relief is appropriate for the reasons set forth in the Memorandum in Support that follows.

Respectfully submitted,

/s/ *Matthew S. Grimsley*  
Matthew S. Grimsley (Ohio 0092942)  
Anthony J. Lazzaro (MI P86195)  
The Lazzaro Law Firm, LLC  
34555 Chagrin Boulevard, Suite 250  
Moreland Hills, Ohio 44022  
Telephone: (216) 696-5000  
Facsimile: (216) 696-7005  
matthew@lazzarolawfirm.com  
anthony@lazzarolawfirm.com  
*Attorneys for Plaintiffs*

/s/ *Joel W. Rice*  
Joel W. Rice  
Franklin Z. Wolf  
Fisher & Phillips LLP  
10 S Wacker Dr., Ste. 3450  
Chicago, Illinois 60606  
Telephone: (312) 346-8061  
Facsimile: (312) 346-3179  
jrice@fisherphillips.com  
fwolf@fisherphillips.com  
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JAMES R. ENGLISH, JR., on behalf of himself and all others similarly situated, | Case No. 1:22-cv-00881 |
| Plaintiff, | Magistrate Judge Sally J. Berens |
| v. | |
| MANN + HUMMEL USA, INC., | **MEMORANDUM IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT AND STIPULATION OF DISMISSAL WITH PREJUDICE** |
| Defendant. | |

## I.  INTRODUCTION

The Parties seek approval of the proposed Fair Labor Standards Act ("FLSA") Settlement reached between them and memorialized in the Joint Stipulation of Settlement and Release ("Settlement" or "Agreement") attached as Exhibit 1. The proposed Settlement will resolve *bona fide* disputes involving unpaid wage claims under the FLSA.

Because the proposed Settlement is an FLSA settlement for employees who have already opted in, as opposed to a Rule 23 opt-out settlement that would bind absent class members, **no fairness hearing is required or requested by the Parties**. *See Batista v. Tremont Enterprises*, No. 1:19CV361, 2019 WL 3306315, *1, n. 1 (N.D. Ohio July 22, 2019) ("The parties do not request a fairness hearing. Nor is the Court required to hold one."); *Koszyk v. Country Financial a/k/a CC Services, Inc.,* No. 16 Civ. 3571, 2016 WL 510919, *1 (N.D. Ill. Sept. 16, 2016) ("[a] one-step settlement approval process is appropriate" in FLSA settlements); *Moore v. Ackerman Inv. Co.*, C 07-3058, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)").

1

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Agreement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel, and with the assistance of an experienced Court-Appointed Facilitative Mediator on February 1, 2024.

The following sections explain the nature of the lawsuit, the negotiations, the Settlement's principal terms, and the propriety of approving the Settlement.

## II.    BACKGROUND

### A.    The Action

On September 22, 2022, Plaintiff, a former manufacturing employee of Defendant, brought this action as a "collective action" as a result of Defendant's alleged practices and policies of not paying its hourly, non-exempt manufacturing employees, including Plaintiff and other similarly situated employees, wages for all hours worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek, in violation of the FLSA, 29 U.S.C. §§ 201-219. (ECF 1.) Specifically, Plaintiff alleges that he and other manufacturing employees of Defendant regularly worked more than 40 hours per work week, were only paid for work performed between their scheduled start and stop times, and were not paid for work Defendant required them to perform before and after their scheduled start and stop times, including: (1) changing into and out of their personal protective equipment, including gloves and safety glasses; (2) getting work assignments and attending meetings; and (3) walking to and from their assigned area of the manufacturing floor. (*Id.*)

Defendant answered Plaintiff's Complaint denying liability, denying that Plaintiffs suffered damages, and asserting, *inter alia*, that the alleged unpaid work was not compensable under the FLSA and the time spent performing such work was otherwise *de minimis*. (ECF 13.)

After this action was filed, the Parties negotiated a Joint Stipulation to Conditional Certification and Notice (ECF 23.) On April 14, 2023, the Court granted the Parties' Joint Stipulation, thereby conditionally certifying and authorizing notice to a putative collective defined as follows: "All current and former payroll non-exempt manufacturing employees of Mann + Hummel USA, Inc., who worked at one or more of its plants in the United States at any time between September 22, 2019 and the present[.]" (ECF 26.)

Thereafter, notice was sent to approximately 2,048 current and former employees. (Ex. 3, Grimsley Decl. at ¶ 16.) In addition to Representative Plaintiff, there are currently 174 Opt-In Plaintiffs. (*Id*. at ¶ 13.)

### B. Investigation, Informal Discovery, and Negotiation of the Settlement

The Parties engaged in substantial investigation prior to negotiating the Settlement. (*See Id*. at ¶¶ 14, 17, 21, 22, 23.) Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific Complaint for the Court and Defendant. (*Id.* at ¶ 21.) Plaintiffs' Counsel also engaged in further independent investigation of the facts, and interviewed and obtained declarations from Representative Plaintiff and several Opt-In Plaintiffs. (*Id*.)

The Parties engaged in substantial informal discovery prior to negotiating the Settlement. (*Id*. at ¶ 22.) After the notice period, the Parties engaged in a comprehensive exchange of information regarding Plaintiffs' claims and Defendant's defenses to such claims. (*Id.* at ¶¶ 17, 21.) This included the production of extensive employment information, including time and pay records for Plaintiffs, and an in-depth analysis and calculations of the Plaintiffs' wage damages. (*Id.* at ¶¶ 17, 22.)

The Parties also engaged in extensive legal discussion, which included multiple discussions and communications between counsel for the Parties regarding Plaintiffs' claims, Defendant's defenses, time, pay, and other employment information for Plaintiffs, and the calculations of Plaintiffs' alleged damages. (*Id.* at ¶ 23.) The Parties, through counsel, also engaged in extensive discussions with the mediator, including during multiple pre-mediation conferences. (*Id.* at ¶ 24.) All aspects of the dispute are well-understood, and the legal issues in this case were vehemently argued by both sides. (*Id.* at ¶ 25.)

In January 2024, Plaintiffs' counsel transmitted an analysis of Plaintiffs' wage damages and a detailed settlement letter setting forth Plaintiffs' position on the claims and damages in this case. (*Id*. at 18.) The Parties also prepared and exchanged detailed Mediation Memoranda, setting forth their position on the legal issues in this case, the merits of Plaintiffs' claims and Defendant's defenses, and Plaintiffs' alleged damages. (*Id*. at 19.)

On February 1, 2024, the Parties attended mediation with the Court-Appointed Facilitative Mediator, E. Thomas McCarthy. (*Id.* at ¶¶ 20.) After several hours of mediation, the Parties, in an effort to reach a compromise and to avoid the continued expense and burden of litigation, reached an agreement to settle the action on the terms set forth in the Settlement Agreement. (*Id.* at ¶¶ 20, 27.)

C. **The Settlement Terms**

If approved by the Court, the Settlement will cover Representative Plaintiff and the 174 existing Opt-In Plaintiffs. The Total Settlement Amount (as set forth in Exhibit 1), will cover: (a) all of the Individual Payments to Plaintiffs; (b) Representative Plaintiff's Service Payment; and (c) Plaintiffs' Counsel's attorneys' fees and expenses. (Ex. 1 at ¶ 19.)

4

Pursuant to the Agreement, most of the Total Settlement Amount (the amount set forth in paragraph 20 of Agreement) will be divided into Individual Payments to the Plaintiffs. (*Id*. at ¶ 20.) In exchange, the Plaintiffs will release Defendant from federal and state wage-and-hour claims asserted in this case for the Release Period. (*Id*. at ¶ 26.) The Individual Payments are provided in Appendix 1 of the Settlement. The Individual Payments were calculated by Plaintiffs' Counsel and are based proportionally on each Plaintiff's alleged overtime damages during the Calculation Period and assuming the three (3) year statute of limitations applies. (*Id*. at ¶ 21.) Moreover, any Plaintiffs who are owed less than $25.00, will receive a minimum payment of $25.00. (*Id*.)

Plaintiffs' alleged wage damages consist of unpaid overtime compensation for hours allegedly worked and unpaid and overtime compensation owed on bonuses. (Ex. 3 at ¶ 33.) Plaintiffs' Counsel calculated the amount of overtime allegedly owed to Plaintiffs by adding 14 minutes per shift worked and recalculating the total hours worked. (*Id*.) Any unpaid overtime compensation was multiplied by one and one-half times each Plaintiff's average hourly rate during their respective employments. (*Id*.) Plaintiffs' Counsel calculated the unpaid overtime compensation owed on bonuses by dividing the bonus amount by the total hours worked in the week in which the bonus was paid to arrive at a rate, and then multiplying 50% of that rate by the number of overtime hours worked in the period. (*Id*.) Based on the records provided by Defendant and as analyzed by Plaintiffs' Counsel, during the calculation period, and assuming the three-year statute of limitations applies, Plaintiffs were allegedly denied overtime compensation for an extra 14 minutes added to each day worked. (*Id*. at ¶ 34.) Thus, the Total Settlement Amount equals approximately **163.3%** of the Plaintiffs' wage damages assuming they worked an additional 14 minutes each shift, and assuming the three-year statute of limitations applies. (*Id.* at ¶ 35.) Moreover, the Individual Payments to Plaintiffs—i.e., the amount the Plaintiffs will receive ***after***

deduction of Plaintiffs' Counsels' attorney's fees and costs, and Representative Plaintiff's Service Award Payment—equals approximately **104.4%** of the Plaintiffs' wage damages (104.2% of the wage damages after also deducting the $25.00 minimum payments) assuming they worked an additional 14 minutes each shift, and assuming the three-year statute of limitations applies. (*Id.* at ¶ 36.)

Moreover, pursuant to the Agreement, one-third of the Total Settlement Amount will be paid to Plaintiffs' Counsel for attorneys' fees and an additional $7,247.49 for expenses incurred in this case. (Ex. 1 at ¶ 25.)

Additionally, $5,000.00 of the Total Settlement Amount will be paid to Representative Plaintiff James R. English Jr. (in additional to his Individual Payment) for his services as the Representative Plaintiff in this action and in exchange for a general release. (*Id.* at ¶ 24.)

### III. THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As explained below, and as shown in the attached Declaration of Matthew S. Grimsley (Exhibit 3), Court approval is warranted on all scores.

### A. The Settlement satisfies the standard for approval.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868, *1, n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir.1982); *see also Cruz v. Don Pancho Market, LLC*, No. 1:15-cv-00698, 2016 WL 4531142 (W.D. Mich. Aug. 23, 2016) ("The Court's role is to determine whether the settlement agreement is fair and reasonable to all concerned."). "To approve a settlement agreement, a court must conclude that it is a 'fair, reasonable, and

adequate' resolution of a bona fide legal dispute." *Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855, \*1 (S.D. Ohio Nov. 8, 2018) (quoting *Int'l Union, United Auto, Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

"The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA." *Andrus v. DenOne, LLC*, No. 1:19-cv-00259, 2019 WL 13195500, \*1 (N.D. Ohio 2019) (citing *Crawford v. Lexington-Fayette Urban County Government*, Civil No. 06-299, 2008 WL 4724499, \*3 (E.D. Ky. Oct. 23, 2008)). "If a settlement in an employee FLSA suit reflects 'a reasonable compromise over issues,' such as FLSA coverage or computation of back wages that are 'actually in dispute,' the court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation." *Cruz v. Don Pancho Market, LLC*, No. 1:15-cv-00698, 2016 WL 4531142 (W.D. Mich. Aug. 23, 2016) (quoting *Gentrup v. Renovo Services, LLC*, No. 1:07cv430, 2011 WL 2532922, \*2 (S.D. Ohio June 24, 2011) (quoting *Lynn Foods Stores, Inc.*, 679 F.2d at 1354).

Other factors Courts consider are: "(1) the risk of fraud or collusion behind the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the plaintiff's likelihood of success on the merits; and (5) the public interest in settlement." *Brittmon*, 2018 WL 7889855, \*1; *see also Andrus*, 2019 WL 13195500, \*1. "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Brittmon,* 2018 WL 7889855, \*1 (quoting *Gentrup v. Renovo Servs., LLC*, No. 07-cv-430, 2011 WL 2532922, \*8 (S.D. Ohio June 24, 2011). Here, all factors favor approval.

7

As an initial matter, a *bona fide* dispute certainly exists between the parties. In fact, there are several issues in dispute—the outcome of which remains uncertain—that could significantly impact this case if it were further litigated. (Ex. 3 at ¶ 26.) The Parties dispute, *inter alia*, whether Defendant violated the FLSA; whether the alleged unpaid work performed by Plaintiffs was compensable under the FLSA such that Plaintiffs are entitled to overtime compensation; the amount of time Plaintiffs spent performing the alleged unpaid work and whether it was *de minimis*; and whether this case can be maintained as a collective action. (*Id*.) Moreover, while Defendant contends that Plaintiffs could not succeed on the merits of their claims, even if they could, the Parties also dispute whether Defendant has a good faith defense that would preclude an award of liquidated damages, and whether Defendant's conduct was willful, and thus, whether the two-year or three-year statute of limitations applies. (*Id*.) Thus, a *bona fide* dispute certainly exists.

Moreover, all other factors likewise favor approval.

First, there is no risk of fraud or collusion as the settlement was negotiated at arms-length, after extensive research, legal debates, discussions, and correspondence, and after good faith bargaining with the assistance of an experienced mediator. (*Id*. at ¶ 20.) *See Moore v. Aerotek, Inc.,* No. 2:15-CV-2701, 2017 WL 2838148, *3 (S.D. Ohio June 30, 2017) ("Absent evidence to the contrary, courts presume that a class settlement is the result of arm's length negotiations and is not the product of fraud or collusion."), report and recommendation adopted, No. 2:15-CV-2701, 2017 WL 3142403 (S.D. Ohio July 25, 2017); *Hainey v. Parrot,* 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.").

8

Second, "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Arledge v. Domino's Pizza, Inc.,* No. 3:16-cv-386, 2018 WL 5023950, *2 (S.D. Ohio Oct. 17, 2018) (citing *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, *7 (S.D. Ohio July 11, 2014)). This case is certainly no exception. As discussed above, several factual and legal issues are in dispute in this case. (Ex. 3 at ¶ 26.) If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. (*Id*. at ¶ 45.) The Parties would be required to engage in extensive formal fact discovery and briefing on decertification and summary judgment. (*Id*.) Moreover, trial of this matter would be complex and factually intensive with respect to both liability and damages, and any final judgment would likely be appealed. (*Id*.)

Third, prior to negotiating the settlement, the parties engaged in substantial investigation and informal discovery. (*Id*. at ¶¶ 14, 17, 18, 19, 21, 22, 23, 25.) Defendant produced the relevant data and information necessary to create an analysis of the Plaintiffs' damages. (*Id*. at ¶¶ 17, 22.) All aspects of the dispute are well-understood by both sides. (*Id*. at ¶ 25.) Moreover, while formal discovery has not yet commenced, "[b]y avoiding formal discovery, resources that otherwise would have been consumed by the litigation were made available for settlement, and the risk and uncertainties for both parties were reduced." *Duprey v. Scotts Co.,* 30 F.Supp.3d 404, 408 (D.Md. 2014).

Fourth, the likelihood of Plaintiffs' success on the merits and the amount of the Settlement in relation to the potential recovery also weigh in favor of approval. As noted above, a *bona fide* dispute exists as to whether Defendant has any liability in this case. (Ex. 3 at ¶ 26.) The outcome of further litigation is uncertain for Plaintiffs, and the risks of continued litigation are evident for both sides. (*Id*. at ¶ 48.) For example, if the Court or jury determined that the alleged pre/post-shift

9

time was *de minimis* or otherwise not compensable, Plaintiffs would be entitled to no recovery. (*Id*. at ¶ 37.) Moreover, even if Plaintiff prevailed in establishing that Defendant violated the FLSA, if a jury or the Court determined that Defendant's violations were not willful, then only the two-year statute of limitations would apply. (*Id*.) Further, even if the three-year statute of limitations applied, if a jury found that Plaintiffs worked only 7 additional minutes per shift, then Plaintiffs' total wage damages would be less than half of the sum of the Individual Payments Plaintiffs are receiving under the Settlement. (*Id*.) The Settlement, on the other hand, guarantees Plaintiffs a substantial recovery. The Total Settlement Amount equals **163.3%** of the Plaintiffs' wage damages assuming they worked an additional 14 minutes each shift and the three-year statute of limitations applies. (*Id*. at ¶ 35.) In fact, ***after*** deductions for attorneys' fees, costs, and the service award payment, the Plaintiffs are still recovering **more than** the wages they are allegedly owed at an additional 14 minutes each shift and under the three-year statute of limitations. (*Id*. at ¶ 36.)

Fifth, public policy favors settlement of class and collective action lawsuits. *See Arledge* 2018 WL 5023950, *2 (citing *Swigart*, 2014 WL 3447947, *4); *Barnes v. Winking Lizard, Inc.,* No. 1:18CV952, 2019 WL 1614822, *4 (N.D. Ohio Mar. 26, 2019).

Sixth, Plaintiffs are represented by counsel with substantial experience litigating wage and hour collective actions (s*ee* Ex. 3), and Plaintiffs' Counsel agrees that the settlement is a fair, reasonable, and adequate compromise of disputed claims, and is in the best interests of the Plaintiffs (*Id*. at ¶ 28).

Additionally, all components of the proposed distribution are proper and reasonable. The Individual Payments (provided in Appendix 1 of the Settlement Agreement) were calculated by

10

Plaintiffs' Counsel, and are proportionally based on each Plaintiff's damages during the Calculation Period, with a minimum payment of $25.00. (Ex. 1 at ¶ 21; Ex. 3 at ¶ 32.)

Accordingly, the Settlement is certainly fair and reasonable and should be approved.

### B. The agreed upon payment of attorneys' fees and expense reimbursements to Plaintiffs' counsel should be approved.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. *See Id.* As the Sixth Circuit stated, the provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). "There is no numeric relationship required between the amount of economic losses recovered and the amount of fees recoverable. Thus, it is not uncommon for fee awards to exceed the amount recovered by plaintiffs in lost wages." *Schraufl v. Riverside Local School Dist.*, No. 1:19-CV-00175, 2019 WL 13171421, *1 (N.D. Ohio 2019).

Here, the requested payment to Plaintiffs' Counsel for attorneys' fees—which equal one-third of the settlement fund—is certainly reasonable and should be approved.

In common fund settlements of wage and hour cases (like this one), Courts in this Circuit routinely award one-third **or more** of the total settlement amount for attorneys fees. *See Bleich v. Cleveland Brewing Company, LLC*, No. 1:21-cv-01891, 2022 WL 2185024, *2 (N.D. Ohio May 16, 2022) ("In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund."); *Waters v. Pizza to You, L.L.C.*, No. 3:19-cv-372, 2022

11

WL 404614, *4 (S.D. Ohio Feb. 9, 2022) ("Counsel's request of one-third of the common fund 'is a normal fee amount in a wage and hour case.'"); *Smith v. SAC Wireless, LLC*, No. 20-10932, 2022 WL 1744785 (E.D. Mich. May 31, 2022) (Granting Plaintiffs' counsel's request for attorneys fees constituting one-third of the total settlement amount, in addition to reimbursement for litigation costs); *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.,* No. 1:16-CV-448, 2017 WL 5247538, *5-6 (S.D. Ohio Nov. 13, 2017) (awarding one-third of $450,000 fund); *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, *6 (S.D. Ohio July 11, 2014) (awarding 33 percent of $4 million settlement fund in wage and hour case); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, *1 (N.D. Ohio Mar. 8, 2010) (approving one-third of fund where there was a recovery constituting one-third of claimed unpaid wages; litigation risks and significant work expended; and a contingency arrangement); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, *3, 7, 8 (N.D. Ohio, June 15, 2010)("The amount of the contingency, one-third of the total award, is also reasonable and has been approved in similar FLSA collective actions in this judicial district."); *Bessey v. Packerland Plainwell, Inc*., No. 4:06-cv-95, 2007 WL 3173972, *4 (W.D. Mich. 2007) (one-third attorneys' fee approved); *see also Moore v. Aerotek, Inc.*, 2017 WL 2838148, *6 (S.D. Ohio June 30, 2017), report and recommendation adopted, No. 2017 WL 3142403 (S.D. Ohio July 25, 2017) ("Fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created."); *Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855 (S.D. Ohio Nov. 8, 2018) (Awarding Plaintiffs' counsel 40% of total settlement amount for attorney fees plus costs); *Rodriguez v. Life Time Fitness*, No. 2:18-cv-01123, 2021 WL 9096176 (S.D. Ohio May 17, 2021) (awarding Plaintiffs' counsel 40% of the settlement fund); *Kritzer v. Safelite Sols.*, *LLC*, No. 2:10-

12

cv-0729, 2012 WL 1945144, *9 (S.D. Ohio May 30, 2012) (awarding 52% of maximum settlement fund to counsel in wage and hour case).

Moreover, the attorneys' fees requested are certainly reasonable in light of the substantial benefit achieved for the Plaintiffs. Again, the Total Settlement Amount equals approximately **163.3%** of the Plaintiffs' wage damages, and the Individual Payments to Plaintiffs—i.e., the amount the Plaintiffs will receive *after* deduction of Plaintiffs' Counsels' attorney's fees and costs, and Representative Plaintiff's Service Award Payment—equals approximately **104.4%** of the Plaintiffs' wage damages, and that is assuming Plaintiffs worked an additional 14 minutes each shift (which Defendant disputes), that such additional time was compensable (which Defendant disputes), and the three-year (as opposed to two-year) statute of limitations applies (which Defendant disputes). (Ex. 3 at ¶ 46.)[1] "In the Sixth Circuit, the recovery in wage and hour cases is typically 7-11%." *Myres v. Hopebridge, LLC,* No. 2:20-CV-5390, 2023 WL 2399056, *5 (S.D. Ohio Feb. 21, 2023); *see also*, *Smith v. SAC Wireless, LLC*, No. CV 20-10932, 2022 WL 1744785, *3 (E.D. Mich. May 31, 2022) (same); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, *8 (N.D. Ohio Mar. 8, 2010) (same). In *Dillworth*, this Court concluded that a recovery of one-third of the wages allegedly owed, ***before*** deducting attorney's fees and costs, is "well above" average. *Dillworth*, 2010 WL 776933, at *8. In *Rotuna v. W. Customer Mgt. Group, LLC*, 4:09CV1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010), this Court explained that a recovery of 25% to 75% of claimed wages as "exceptional." *Id*. at *8. Measured against that standard, the Settlement in this case is certainly a good result for the collective.

Likewise, the complexity of this litigation certainly favors approval of the requested fees.

---

[1] In fact, the Total Settlement Amount is **substantially more** than what Plaintiffs would be owed if they worked an additional **20 minutes** per shift. (Ex. 3 at ¶ 47.)

13

"Wage-and-hour collective actions are, by their nature, complicated and time-consuming." *See Barnes v. Winking Lizard, Inc.,* 2019 WL 1614822, *2 (N.D. Ohio Mar. 26, 2019) (citing *Swigart v. Fifth Third Bank*, 2014 WL 3447947, *7 (S.D. Ohio July 11, 2014); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, *3 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them"). If forced to litigate this case further, the Parties would be required to engage in extensive fact discovery and briefing regarding motions for summary judgment and decertification. Further, trial of this matter would be complex and factually intensive with respect to both liability and damages, and any final judgment may be appealed. (Ex. 3 at ¶ 45.)

Further, Plaintiffs' Counsel undertook representation under a contingent-fee basis, expended significant time and effort and advanced costs and expenses, without any guarantee of compensation. (Ex. 3 at ¶ 43.) Thus, the attorneys' fees in this case were entirely contingent upon the success of this litigation and should not be altered because counsel efficiently resolved this case rather than prolonging the litigation and increasing the potential fees. *See* Manual for Complex Litigation (4th) § 14.121 ("one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation.").

Had this case not settled, the Plaintiffs' Counsel would have vigorously litigated the case without any promise of the success they achieved in reaching the settlement. (*Id*. at ¶ 44.) Again, *bona fide* disputes exist between the Parties, the outcome of which remains uncertain. (*Id.* at ¶¶ 26, 37, 47.) For example, if the Court determined that the alleged unpaid time was *de minimis* or not compensable, Plaintiffs would be entitled to no recovery. (*Id*. at ¶ 44.)

Furthermore, society's stake in rewarding attorneys who bring class action wage and hour

14

cases also favors the requested award. In *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014), a wage and hour case, the Court found that "the percentage approach is the most appropriate method for determining reasonable attorneys' fees" and awarded 33%, or $1,320,000, of the $4,000,000 settlement fund to class counsel. *Id*. at *5. In doing so, this Court found: "Society's stake in rewarding attorneys who bring class action wage and hour cases favors the requested award." *Id*. at *6 (citing *Gentrup v. Renovo Servs., LLC*, No. 1:07–cv–430, 2011 WL 2532922, *4 (S.D. Ohio, June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

Additionally, the services rendered to the Plaintiffs reflect the substantial experience Plaintiffs' Counsel has with litigating collective and class actions, as explained in the Declaration attached hereto. (*See* Ex. 3.) In fact, Plaintiffs' Counsel's one third fee request has been routinely approved in numerous similar collective and class actions. (*See Id.* at ¶ 50.)

In addition, the litigation expenses sought to be reimbursed are also proper and reasonable. Plaintiffs' Counsel has incurred expenses in the amount of $7,247.49, which includes $2,981.69 for the administration of notice and consent forms in this case; $402.00 incurred for the filing fee; $178.80 for data entry expenses relating to the calculation of damages; $575.00 for public records searches; $500.00 for miscellaneous litigation expenses; and $2,610.00 for mediation (*Id.* at ¶ 51.) All expenses were incurred during the course of the litigation of this action. (*Id.*)

Accordingly, the requested payment for attorneys' fees and expenses should be approved.

## C.   The Service Award Payment to Representative Plaintiff should be approved.

"Service or incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Osman*

15

*v. Grube, Inc.*, No. 3:16-cv-802, 2018 WL 2095172, *2 (N.D. Ohio Feb. 9, 2024). Courts routinely authorize service awards as efficacious ways of encouraging individuals to serve as representative plaintiffs and rewarding them for their efforts taken on behalf of the class or collective they represent. *See Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, *7 (N.D. Ohio Mar. 8, 2010); *McFarlin v. Word Enterprises, LLC*, No. 16-CV-12536, 2020 WL 2745300, *2 (E.D. Mich. May 27, 2020).

Here, Representative Plaintiff provided substantial and effective services in this case. (Ex. 3 at ¶ 40). He, *inter alia*: agreed to bring this action in his name; provided extensive and critical factual information, including information that assisted Plaintiffs' Counsel in formulating the claims in this case and preparing a detailed, factually specific Complaint; faithfully engaged in several and extensive communications with Plaintiffs' Counsel throughout the course of this litigation; made himself available throughout the mediation in this case; and provided pertinent information to Plaintiffs' Counsel during mediation that significantly helped Plaintiffs' Counsel in negotiating the Settlement that was reached in this case. (*Id.*)

Moreover, Representative Plaintiff risked his employment reputation by subjecting himself to the responsibility of serving as the named Plaintiff in a lawsuit against his former employer. (*Id.* at ¶ 41.) *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, *5 (S.D. Ohio Nov. 25, 2019) (noting that "It is important to compensate the work and additional risk that a class representative takes on, particularly in a wage and hour lawsuit", and stating: "[b]ut for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed. A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a

16

simple internet search, this risk is very real."); *Guippone v. BH S & B Holdings, LLC*, No. 09 CIV. 01029 CM, 2011 WL 5148650, *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Edelen v. Am. Residential Servs.*, LLC, No. Civ. A. 11-2744, 2013 WL 3816986, *16 (D. Md. July 22, 2013) (approving incentive payment noting that: "although there is no indication that Mr. Edelen faces any specific challenges in his current or future job prospects as a result of his participation in this lawsuit, there clearly is a risk that he could."); *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, *1 (S.D.N.Y. Feb. 9, 2010) ("former employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Id.*

Further, in exchange for the Service Award Payment, Representative Plaintiff will be bound by a general release of his claims. *See Yorba v. Barrington School, LLC*, No. 2:21-cv-691, 2022 WL 2436952, *6 (S.D. Ohio July 5, 2022); *Edelen*, 2013 WL 3816986, at *16.

Additionally, the amount requested ($5,000) is well within the range that Courts in this circuit routinely approve in similar cases. *McFarlin v. Word Enterprises, LLC*, No. 16-CV-12536, 2020 WL 2745300, *2 (E.D. Mich. May 27, 2020) (approving service awards in the amount of $10,000 to one named Plaintiff and $5,000 to the two other named Plaintiffs); *Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, *6 (S.D. Ohio Jan. 18, 2019) (approving $10,000 service award to named plaintiff); *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 WL 2095172, *2 (N.D. Ohio May 4, 2018) (approving $7,500 service award to representative plaintiff in FLSA collective action that settled for $500,000); *Dillworth v. Case Farms Processing,*

17

*Inc.,* No. 5:08-cv-1694, 2010 WL 776933, *7 (N.D. Ohio Mar.8, 2010) (approving service award of $6,000 to one named Plaintiff and $4,000 to the other named plaintiff).

Accordingly, the requested Service Award Payment to Representative Plaintiff is certainly reasonable and should be approved.

## IV.    CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Honorable Court approve the Settlement by entering the proposed Order of Dismissal and Approving Settlement attached as Exhibit 2.

Respectfully submitted,

| | |
|---|---|
| /s/ *Matthew S. Grimsley* | /s/ *Joel W. Rice* |
| Matthew S. Grimsley (Ohio 0092942) | Joel W. Rice |
| Anthony J. Lazzaro (MI P86195) | Franklin Z. Wolf |
| The Lazzaro Law Firm, LLC | Fisher & Phillips LLP |
| 34555 Chagrin Boulevard, Suite 250 | 10 S Wacker Dr., Ste. 3450 |
| Moreland Hills, Ohio 44022 | Chicago, Illinois 60606 |
| Telephone: (216) 696-5000 | Telephone: (312) 346-8061 |
| Facsimile: (216) 696-7005 | Facsimile: (312) 346-3179 |
| matthew@lazzarolawfirm.com | jrice@fisherphillips.com |
| anthony@lazzarolawfirm.com | fwolf@fisherphillips.com |
| *Attorneys for Plaintiffs* | *Attorneys for Defendant* |

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the forgoing Memorandum in Support of Joint Motion for Approval of Settlement and Stipulation of Dismissal Without Prejudice contains approximately 5,341 words as defined by LCivR 7.2(b)(i), and thus, does not exceed that 10,800 word limit for briefs in support of dispositive motions.

/s/ *Matthew S. Grimsley*
Matthew S. Grimsley (Ohio 0092942)
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 8, 2024, a true copy of the foregoing was filed electronically and sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

/s/ *Matthew S. Grimsley*
Matthew S. Grimsley (Ohio 0092942)
*Attorney for Plaintiffs*